IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

|                                      |     |                      |
| ------------------------------------ | --- | -------------------- |
| LARRY MOORE,                         | )   |                      |
|                                      | )   |                      |
|     Plaintiff,   | )   |                      |
|                                      | )   |                      |
| vs.                                  | )   | No. 10-2933-AJT-tmp  |
|                                      | )   |                      |
| UNIVERSITY OF MEMPHIS,               | )   |                      |
| SHIRLEY RAINES, RAJIV GROVER,        | )   |                      |
| RALPH FAUDREE, JR.,                  | )   |                      |
|                                      | )   |                      |
|     Defendants.  | )   |                      |

---

## REPORT AND RECOMMENDATION
---

Before the court by order of reference is Defendants Shirley
Raines's, Rajiv Grover's, and Ralph Faudree, Jr.'s (collectively,
"Individual Defendants") Motion for Summary Judgment, filed January
31, 2013.[1] (ECF No. 41.) Plaintiff Larry Moore filed a response
in opposition to the motion on March 31, 2013, and the Individual
Defendants filed a reply to Dr. Moore's response on April 12, 2013.
For the following reasons, the court recommends that the motion be
granted in part and denied in part.

### I.  PROPOSED FINDINGS OF FACT

---

[1]The University of Memphis, also a defendant to this action, filed
a separate Motion for Summary Judgment on January 13, 2013. The
University and the Individual Defendants submitted identical
statements of undisputed facts with their motions. In this report
and recommendation, "Defendants" shall refer to the University and
Individual Defendants collectively. The merits of the University's
motion are addressed in a separate Report and Recommendation.

**A.  Background**

Unless otherwise stated, the following facts are undisputed.[2]
Dr. Larry Moore, who is African-American, is a licensed attorney
who became employed by the University of Memphis ("University") in
August 1987.  (Defendants' Statement of Undisputed Facts ("DSUF")
¶ 1, ECF No. 41; First Offer Letter, Apr. 28, 1987, Ex. A, Bates
Nos. U of M 285-86.)  He was hired for a one-year, non-tenure track
appointment at the rank of Assistant Professor of Business Law in
the Department of Finance, Insurance and Real Estate.  (Id.)  In
1988, Dr. Moore was hired for a tenure track appointment in the
same rank of Assistant Professor.  (DSUF ¶ 2; Second Offer Letter,
June 27, 1988, Ex. A, Bates No. U of M 291.)  The position had a
probationary period of five years, and reappointment each academic
year was "subject to annual review of progress toward tenure,"
which involved an examination of evidence of accomplishments in the
areas of research, teaching, and service.  (Id.)

In the 1992-1993 academic year, Dr. Moore applied for tenure
and promotion to the rank of Associate Professor.  (DSUF ¶ 3;

---

[2]In his response to the motion for summary judgment, Dr. Moore
suggests that there is outstanding discovery that is needed to
support his claims, but he does not identify the discovery he
believes would be relevant, or to which claims the discovery would
relate.  The court notes that it has ruled on the motion to compel,
and the Defendants have apparently produced the discovery ordered
by the court.  More importantly, Dr. Moore has not complied with
Federal Rule of Civil Procedure 56(d), which requires an affidavit
or declaration to support an assertion that additional discovery is
needed prior to responding to a summary judgment motion.

Letters from President V. Lane Rawlins and Provost J. Ivan Legg, Ex. A, Bates Nos. U of M 1264-67.)  Although he was not recommended for promotion at that time, his application for promotion and tenure was extended one year to allow him the opportunity to further develop his scholarly activity and research program. (<u>Id.</u>) On June 24, 1994, the Tennessee Board of Regents awarded Dr. Moore tenure and promoted him to the rank of Associate Professor, effective September 1, 1994. (DSUF ¶ 4; Letter from President Rawlins, July 15, 1994, Ex. A, Bates Nos. U of M 1256, 1258.)  In Spring 2002, Dr. Moore was moved, along with the other business law faculty, into the School of Accountancy. (DSUF ¶ 5; Response to EEOC Charge of Discrimination, Ex. D, pg. 11.)

The Faculty Roles and Rewards Document for Fogelman College provides three areas of consideration for evaluation of a candidate who is applying for promotion in rank from Associate to Full Professor. (DSUF ¶ 10; <u>Faculty Roles and Rewards Document</u>, Fogelman College of Business & Economics, Dec. 8, 2005, Ex. D, pgs. 13-16.)  These areas include: teaching, service, and "research and scholarly activity." (<u>Id.</u>)  With respect to research and scholarly activity, the Faculty Roles and Rewards Document states an expectation of "a consistent flow of research activity, normally expected to result in an average of one publication per year since promotion to Associate [Professor]." (DSUF ¶ 11; <u>Faculty Roles and Rewards Document</u>, Ex. D, pg. 15.)

In 2008, Dr. Moore applied for promotion from Associate Professor to Full Professor in the School of Accountancy, but was not recommended for promotion. (DSUF ¶ 6; Letter from Provost Faudree, Jan. 15, 2009, Ex. A, Bates Nos. U of M 1234.) In a memorandum to Provost Ralph Faudree, Jr., dated November 24, 2008, Dr. Rajiv Grover, Dean of Fogelman College of Business and Economics, stated that "in evaluation of the totality of Professor Moore's accomplishments in teaching, research and scholarly activity, and service," Dr. Moore had not yet met the criteria for promotion to Full Professor, and that he (Dean Grover) would not recommend that Dr. Moore be promoted. (DSUF ¶ 31; Letter from Dean Grover, Ex. A, Bates Nos. 1144-45.) Provost Faudree sent a letter to Dr. Moore on January 15, 2009, stating that he (Provost Faudree) recommending Dr. Moore for promotion. (Letter from Provost Faudree, Bates No. U of M 1234.) According to the letter, Provost Faudree's decision to not recommend Dr. Moore for promotion was based on his "modest record of scholarly work and an inconsistent flow of research that builds upon the body of knowledge and gains national recognition."[3] (Id.)

Dr. Moore appealed Provost Faudree's decision to the University Faculty Tenure and Promotion Appeals Committee ("Appeals Committee"), on the grounds of racial discrimination and mistake or

---

[3]In Provost Faudree's letter, he acknowledges that Dr. Moore has contributed to the University "with substantial service and a solid teaching record." (Bates No. U of M 1234.)

failure to review Dr. Moore's dossier application for promotion. (DSUF ¶ 9; Notice of Appeal Letter, Jan. 28, 2009, Ex. A, Bates No. U of M 1235.) The Appeals Committee met on March 5, 2009, to hear Dr. Moore's appeal of the Provost's negative recommendation.[4] (DSUF ¶ 12; Appeals Committee Memorandum, Mar. 6, 2009, Ex. A, Bates No. U of M 1139.) Present at the hearing, in addition to the five members of the Appeals Committee, were Dr. Moore, Provost Faudree, and Dean Grover. (Transcript of Appeals Committee Hearing, ECF No. 40-6, Ex. C.) Following the hearing, the Appeals Committee determined by unanimous vote that there was no evidence of unlawful discrimination based on race, and that there was no "evidence of a mistake in the review of [Dr. Moore's] dossier such that a reviewing body is unaware of a credential that satisfies a requirement for promotion". (Id.; Appeals Committee Memorandum, Ex. A, Bates No. U of M 1140.) According to the Appeals Committee, there was "no indication that discrimination on the basis of race or any other factor entered into the considerations leading to" Dr. Moore's negative recommendations for promotion, and "[a]ll indications are that the dossier provided to the Dean and the Provost was fully reviewed and that no credential was overlooked." (Id.)

After the Appeals Committee's findings were published, Dr.

---

[4]The Appeals Committee was composed of Professors Michael Cannito, Ebenezer George, Carl Halford, Ronnie Priest, and Jon Tienson (Chair). (Bates No. U of M 1139.)

Shirley Raines, President of the University, met with Provost Faudree to review Dr. Moore's application for promotion. (DSUF ¶ 13; Raines's Dep., Ex. E, pg. 31-33.) Following her meeting with Provost Faudree, President Raines accepted the recommendations of Provost Faudree and Dean Grover. (Id.) On April 30, 2009, President Raines notified Dr. Moore that she would not recommend him to the Tennessee Board of Regents for promotion to Full Professor. (DSUF ¶ 14; Letter from President Raines, Apr. 30, 2009, Bates No. U of M 1236.)

On August 12, 2009, Dr. Moore filed a Title VII race discrimination charge against the University with the Equal Employment Opportunity Commission ("EEOC"). (DSUF ¶ 15; "Discrimination Charge," EEOC Charge No. 490-2009-02573, Ex. A, Bates No. U of M 1406.) In his Discrimination Charge, Dr. Moore claims that he was denied promotion to Full Professor by Dean Grover, Provost Faudree, and President Raines, and that white employees with less seniority and fewer accomplishments have been promoted to Full Professor. (Id.) Dr. Moore identifies Dr. Jerry Turner as a comparator who was promoted but had qualifications that were equal to or lesser than those of Dr. Moore. (Id.) Dr. Turner is a white professor in the School of Accountancy who was promoted from Associate to Full Professor in 2008 - the year before Dr. Moore's application for promotion was denied. (DSUF ¶ 21; Letters from Provost Faudree and President Raines, Ex. A, Bates Nos. U of

M 1425-27.)  Dr. Turner had been a tenured Associate Professor since the 2003-2004 academic year prior to his promotion to Full Professor.  (DSUF ¶ 34; Letters from President Raines, Ex. A, Bates Nos. 1426-27.)  During the period of review for his application for promotion to Full Professor (from 2003 to 2008), Dr. Turner published a total of eight articles.  (DSUF ¶ 19; Ex. A, Bates Nos. 1506, 1515, 1519, and 1523.)

Dr. Moore also claims in his Discrimination Charge that he has been subjected to unequal wages based on race, and he compares himself to two other Business Law professors: Dr. Irvin Tankersley and Dr. Nancy Mardis.  (DSUF ¶ 15; Discrimination Charge, Ex. A, Bates No. U of M 1406.)  Dr. Moore claims that Dr. Tankersley has published no papers, and that Dr. Mardis has only published one paper, yet both are paid a higher salary than him.  (<u>Id.</u>)  Dr. Tankersley was the only other full-time Business Law faculty member in the School of Accountancy, other than Dr. Moore, during the 2008-2009 academic year.  (DSUF ¶ 7; Ex. D, pg. 3.)  He is a white, male attorney who was hired by the University in 1973, and he is also a tenured, Associate Professor.  (<u>Id.</u>)  Dr. Tankersley's salary for the 2008-2009 and 2009-2010 academic years was $66,947, and Dr. Moore's salary was $54,097.  (DSUF ¶¶ 23-24; <u>School of Accountancy Faculty 2008-2009</u>, Ex. A, Bates No. U of M 1136.)  Dr. Mardis is a white female Business Law faculty member who retired in May 2008.  (DSUF ¶ 25; Response to EEOC Charge of Discrimination,

Ex. A, Bates Nos. U of M 1133-34.)  Her salary for the 2007-2008 academic year was $55,058, and she would have earned the same salary for the 2008-2009 year had she not retired, as there were no salary increases for those years.  (Id.)

Finally, Dr. Moore claims in his Discrimination Charge that he has been subjected to unequal terms and conditions of employment by being consistently assigned more classes and students to instruct, while white professors are assigned fewer classes and students but are compensated with greater pay and more promotions.  (DSUF ¶ 15; Discrimination Charge, Ex. A, Bates No. U of M 1406.)  Dr. Moore's class load for the 2008-2009 academic year was "9 and 9."[5]  (DSUF ¶ 26; School of Accountancy Faculty Teaching Loads, Ex. A, Bates No. U of M 1137.)  Dr. Tankersley's class load for the 2008-2009 academic year was also 9 and 9.  (DSUF ¶ 27; School of Accountancy Faculty Teaching Loads, Ex. A, Bates No. U of M 1137.)  During the 2000-2001 and 2001-2002 academic years, Dr. Moore's teaching load was 9 and 12.  (DSUF ¶ 26; School of Accountancy Faculty Teaching Loads, Ex. A, Bates No. U of M 1137.)  For each academic year between 2002 to the present, his class load has been 9 and 9.[6]

_____

[5]"9 and 9" refers to the credit hours taught for the Fall and Spring semesters, respectively, of a given academic year.

[6]These teaching loads do not include hours taught in the summer. It appears from the record (specifically, from the Appeals Committee's hearing transcript and Dr. Moore's own assertions) that summer courses are optional for professors and serve as a source of additional income.

(Id.)

On September 27, 2010, Dr. Moore was issued a Notice of Right to Sue letter for his Discrimination Charge. (DSUF ¶ 16; <u>Dismissal and Notice of Rights</u>, Sept. 7, 2010, Ex. D, pg. 5.) On October 22, 2010, Charlene Spiceland, Assistant to the Director of the School of Accountancy, sent an email to Dr. Moore and Dr. Tankersley, advising them of a book change for all Business Law Spring 2011 classes. (DSUF ¶ 17; Spiceland Email, Ex. A, Bates No. U of M 1114-16.) The email stated that consistency was being instituted across courses, pursuant to both a college and university mandate, and that all sections of "ACCT 3130" would be using the new book. (Id.) On October 25, 2010, Dr. Moore filed a second EEOC charge against the University for retaliation. (DSUF ¶ 17; "Retaliation Charge," EEOC Charge No. 490-2011-00192, Ex. D, pg. 52.) In his Retaliation Charge, Dr. Moore claims that he was subjected to an unequal term and condition of employment in that Spiceland, a non-supervisory/management official, chose a textbook for him. (Id.) Dr. Moore asserts that he has never had textbooks chosen for him, that other professors did not have textbooks chosen for them, and that no professor in a specialized course (such as law) has ever had textbooks chosen for them. (Id.) Dr. Moore claims in his Retaliation Charge that "the University is denying [his] academic instructional freedom," and asserts his belief that the change in textbooks directive was an act of retaliation by the University for

his filing the previous Discrimination Charge. (Id.)  On March 29, 2011, the EEOC mailed Dr. Moore a Dismissal and Notice of Rights letter for his Retaliation Charge.[7]  (DSUF ¶ 32; Dismissal and Notice of Rights, Mar. 29, 2011, Ex. A, Bates No. U of M 1105.)

## B.    Complaint

On December 26, 2010, Dr. Moore filed a complaint against the University, President Raines, Dean Grover, and Provost Faudree. (Pl.'s Compl., ECF No. 1.)  In his complaint, Dr. Moore alleges several federal and state causes of action, including violations of Title VII of the Civil Rights Act of 1964 ("Title VII"); violations of federal civil rights statutes 42 U.S.C. §§ 1981 ("§ 1981 claim"), 1983 ("§ 1983 claim"), and 1985 ("§ 1985 claim"); denial of Equal Protection and Due Process as guaranteed by the Fourteenth Amendment; retaliation; conspiracy; false light; invasion of privacy; interference with contractual relations; intentional infliction of emotional distress; outrageous conduct; misrepresentation; reckless and negligent reporting; harassment; civil and criminal fraud; promissory fraud; slander; and libel.

Dr. Moore's allegations against the named Individual Defendants focus on his denial of promotion to Full Professor.  Dr. Moore claims that Dean Grover and Provost Faudree "deliberately and

---

[7]Paragraph 32 of the Defendants' Statement of Undisputed Facts states that the Right to Sue letter was issued on September 27, 2010.  However, this appears to be a typographical error, as the Retaliation Charge was not submitted to the EEOC until October 2010, and the cited document is stamped March 29, 2011.

intentionally violated several statutes and common law doctrines and laws" through their actions during the administrative appeal hearing on March 5, 2009. He claims that they "intentionally and/or recklessly reported, misrepresented, slandered, [and] libeled the plaintiff to the members of the Committee, who were all ultimately under defendant Faudree's direct supervision; they also harassed him, committed civil and criminal fraud against him, conspired to deprive the Plaintiff of his constitutionally protected statutory and Constitutional rights of equal protection, due process, equal employment opportunities, invaded his privacy and placed him in a false light, interfered with his right to contract equally and committed outrageous conduct and inflicted emotional distress upon him, all under color of law and authority." (Pl.'s Compl. ¶ 4.) Dr. Moore alleges that they falsely informed members of the Appeals Committee at the hearing that his application "lacked necessary endorsements in his (seven) recommendation letters when in fact, six past Presidents of the American Business Law Association/Academy of Legal Studies In Business did absolutely recommend him as well as his superior[.]" (Id. ¶ 7.) According to Dr. Moore, "this constitutes slander, civil and criminal fraud, reckless and negligent reporting, misrepresentation, false light, intentional infliction of emotional distress, outrageous conduct, interference with contractual relations and harassment, all under color of law and authority."

(Id.) Moreover, Dr. Moore claims that in a letter from Dean Grover to Provost Faudree on November 24, 2008, Dean Grover states that "the textbook that is co-authored by Professor Moore with Horizon Publications in 2008 appears to be a local adaptation of a textbook for which he has added his own content." (Id. ¶ 8.) Dr. Moore claims that this statement constitutes "at the very least invasion of privacy, false light, slander, libel, fraud, among others, all under the color of law and authority." (Id.) According to the complaint, President Raines "at all time[s] condoned, promoted and was aware of the discriminatory behavior of her Provost and Dean and of the ongoing Civil Rights Violations in the Fogelman College of Business[.]" (Id. ¶ 5.) Dr. Moore claims that due to the Defendants' acts and omissions, "adverse employment action was taken against the plaintiff in that he did not receive full professorship with attendant raise and benefits and disparate treatment[.]" (Id. ¶ 12.) He claims that the Defendants were in a position to correct the actions and omissions but did not, and that "the institution and Shirley Raines formally upheld all actions and omissions of the defendants, Grover and Faudree, Jr., in its internal processes perfunctorily and without real review or supervision, all under color of law and authority." (Id.)

In addition to his denial of promotion, Dr. Moore claims that he has been discriminated against by the University throughout his tenure at the school. Dr. Moore claims that "[d]uring the twenty-

three years he has been employed at the University of Memphis, Professor Moore has received disparate treatment; he is one of the lowest paid professors (if not the lowest paid non-adjunct professor) and receives almost the same salary he was given in 1987, despite receiving tenured status in 1994; other employees during this period of time received disparately greater salaries and, over time, greater raises, costs of living raises, better terms and conditions and benefits[.]" (Id. ¶ 6.) Dr. Moore asserts that "his present salary remains well below the average beginning salary for most professors at this University (as well as at other Universities in Tennessee and other states) with the same, and indeed, lesser qualifications, experience and credentials[.]" (Id.) According to Dr. Moore, all of these acts of discrimination constitute violations of the above enumerated federal and state laws. (Id.) He also claims that he has been "systematically denied support and graduate student assistants and assigned one of the largest teaching loads at the University, all under color of law and authority." (Id. ¶ 9.) With respect to President Raines's tenure specifically, Dr. Moore alleges that there has been a "deliberate and systematic deprivation of the Civil Rights of the plaintiff and other African-Americans, to equal access to jobs, pay, opportunities and promotion in the University and at the Fogelman College during her tenure[.]" (Id. ¶ 5.)

In his complaint, Dr. Moore requests relief for the injuries

which he has suffered and continues to suffer "due to and proximately caused by the acts and omissions of the Defendants over the twenty three years he has been employed at the University." (Id. ¶ 13.) He seeks compensatory damages in the amount of $1,000,000 and a like amount of punitive damages. He also requests that the court "enjoin the Defendants . . . to cease and desist discriminatory treatment and practices, conspiracy, retaliation, threats and the various other continual torts" and to remove Dean Grover and Provost Faudree from any form of supervision of Dr. Moore. Finally, Dr. Moore asks the court to order "such other and further relief as it deems necessary and proper in these circumstances, including the award of attorney fees and costs."

On June 13, 2011, Dr. Moore filed an amended complaint retaining all allegations in the original complaint and adding allegations of retaliation against the Defendants. In his amended complaint, Dr. Moore claims that he was subject to disparate treatment following the filing of his EEOC Discrimination Charge. (Pl.'s Am. Compl. ¶ 2.) He alleges that he was singled out with "unprecedented scrutiny and supervision, to which no one similarly situated had ever [] been subjected, including but not limited to the following: the defendant(s), agents acting on behalf of the defendant(s) and his supervisors gave him assignments which involved a more difficult teaching work load and directed a graduate assistant student to begin to shadow him, concerning a

textbook, which he had been writing for several years and which was the subject of a misrepresentation by the defendant(s), in his quest for a raise and a promotion in 2009." (<u>Id.</u>) Dr. Moore claims that this disparate treatment "is aimed to humiliate and intimidate him, in a campaign of retaliation for the filing of the August EEOC filing" and that he "has suffered further and additional damage due to and proximately caused by the acts and omissions of the Defendants over the twenty four years he has been employed at the University and continues to suffer[.]" (<u>Id.</u> ¶¶ 4-5.)  In his amended complaint, Dr. Moore requests additional relief, including compensatory damages in the amount of $650,000,000, a like amount of punitive damages, and the removal of any graduate assistant or anyone at the direction of Dean Grover and Provost Faudree to shadow or supervise Dr. Moore.

**C.    Motion for Summary Judgment**

The Individual Defendants move for summary judgment on all of Dr. Moore's claims against them in their official and individual capacities.  According to the motion, the Individual Defendants' challenged conduct consists solely of "discrete actions that occurred on or prior to April 30, 2009," and includes the following: "participation as a witness at Plaintiff's March 5, 2009 administrative appeal hearing; review and evaluation of Plaintiff's promotional application in 2008; formulation of their opinion(s) about Plaintiff's application for promotion and reporting of same;

and informing Plaintiff of their decision(s) as to Plaintiff's application for promotion." They argue that their actions, all of which were in their official capacities, do not constitute libel, slander, harassment, conspiracy, invasion of privacy, false light, interference with his right to contract, infliction of emotional distress, recklessness, misrepresentation, or a violation of any of Dr. Moore's protected civil rights. They state that their actions and comments pertaining to Dr. Moore's denied promotion were based on each individual's determination and academic judgment that Dr. Moore did not meet the criteria necessary to be recommended for promotion to Full Professor, and that none of their actions were racially motivated or discriminatory in any way. The Individual Defendants argue specifically that (1) Eleventh Amendment sovereign immunity bars Dr. Moore from bringing claims against them in their official capacities; (2) there is no liability for non-employers under Title VII and therefore Dr. Moore's Title VII claims should be dismissed against them; (3) the §§ 1981, 1983, and 1985 claims should be dismissed against them in their individual capacities based on qualified immunity; (4) the §§ 1981, 1983, and 1985 claims are barred by the applicable statute of limitations; (5) the § 1985 claim should be dismissed under the "intra-corporate conspiracy" doctrine; and (6) the Tennessee statutory and common law claims are baseless and unsupported by the undisputed material facts.

In his response to the motion, Dr. Moore does not address the

majority of the Individual Defendants' arguments.  In particular, Dr. Moore does not respond to the arguments made regarding individual liability under Title VII, qualified immunity, and the intra-corporate conspiracy doctrine.  Moreover, the full extent of Dr. Moore's response to the Individual Defendants' statute of limitations argument is on page two of his response, where he states that "None of his claims are time barred[.]" In response to the Individual Defendants' sovereign immunity argument, Dr. Moore asserts that the prospective relief sought pursuant to § 1983 is not barred by the Eleventh Amendment.  He also refers to Congress's power to abrogate state immunity, but does not specify for which claims immunity has been abrogated.  The vast majority of the response memorandum speaks to the merits of his Title VII claims, which is not at issue in this motion.[8]

## II.  PROPOSED CONCLUSIONS OF LAW

### A.  Summary Judgment Standard

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Geiger v. Tower Auto., 579 F.3d 614, 620 (6th Cir. 2009).  In

---

[8]Much of Dr. Moore's response appears to be copied directly from his response to a separate motion for summary judgment in this case, which was filed by the University and deals with a different set of issues than those raised in the Individual Defendants' motion.

reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted). "The moving party bears the initial burden of production." Palmer v. Cacioppo, 429 F. App'x 491, 495 (6th Cir. 2011) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). Once the moving party has met its burden, "the burden shifts to the nonmoving party, who must present some 'specific facts showing that there is a genuine issue for trial.'" Jakubowski v. Christ Hosp., Inc., 627 F.3d 195, 200 (6th Cir. 2010) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "[I]f the nonmoving party fails to make a sufficient showing on an essential element of the case with respect to which the nonmovant has the burden, the moving party is entitled to summary judgment as a matter of law." Thompson v. Ashe, 250 F.3d 399, 405 (6th Cir. 2001). "The central issue 'is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Palmer, 429 F. App'x at 495 (quoting Anderson, 477 U.S. at 251-52).

## B. Official Capacity Claims

### 1. Claims Against State Officials Are Claims Against the State

Dr. Moore has sued both the University as well as the Individual Defendants in their official capacities. As explained

in more detail below, all claims for monetary damages or other retroactive relief against the Individual Defendants in their official capacities are the same as the claims against the University (and are actually claims against the State of Tennessee). There is an exception to this general rule, which applies to any claims against the Individual Defendants in their official capacities for continuing violations of federal law for which Dr. Moore is seeking prospective injunctive or declaratory relief. Because Dr. Moore has failed to sufficiently allege or provide evidence of any continuing federal violations by any of the Individual Defendants, and has also failed to request any cognizable prospective relief, the court recommends that all of the Individual Defendants be dismissed in their official capacities.

Generally, "[a] suit against an individual in his official capacity is the equivalent of a suit against the governmental entity." Matthew v. Jones, 35 F.3d 1046, 1049 (6th Cir. 1994); see also Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather a suit against the official's office."); Kentucky v. Graham, 473 U.S. 159, 165-66 (1985) ("Official capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent.") (citation and quotation marks omitted); Toth v. City of Toledo, 480 F. App'x 827, 830 n. 1 (6th Cir. 2012)

("Toth sued Navarre and Reinbolt only in their official capacities as agents of the City of Toledo, so the action is one only against the City of Toledo."); <u>Briner v. City of Ontario</u>, 370 F. App'x 682, 699 (6th Cir. 2010) ("An official capacity suit is, in all respects other than the name, to be treated as a suit against the entity."); <u>Moore v. City of Harriman</u>, 272 F.3d 769, 776 (6th Cir. 2001) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather a suit against the official's office . . . as such, it is no different from a suit against the State itself."). In cases where the entity that is being sued is the state, state officials sued in their official capacities typically may be dismissed.[9] <u>See, e.g.</u>, <u>Faith Baptist Church v. Waterford Twp.</u>, No. 10-1406, 2013 WL 1489387, at *4 (6th Cir. Apr. 11, 2013) (the district court properly dismissed the official-capacity suit against a township's prosecuting attorney because the township, the real party in interest, was already a defendant to the lawsuit). However, if the plaintiff seeks prospective injunctive relief to end a continuing violation of

---

[9]As discussed in the report and recommendation on the University's motion for summary judgment, the University of Memphis is considered an agency of the State of Tennessee, and is therefore entitled to Eleventh Amendment sovereign immunity. <u>See</u> <u>Long v. Richardson</u>, 525 F.2d 74, 79 (6th Cir. 1975) ("[The University of Memphis] is an institution to which the doctrine of sovereign immunity applies[.]"); <u>see also</u> <u>Dotson v. State Technical Inst. of Memphis, Tenn.</u>, No. 97-5629, 1997 WL 777947, at *1 (6th Cir. Dec. 12, 1997); <u>Dunn v. Spivey</u>, No. 2:09-0007, 2009 WL 1322600, at *3 (M.D. Tenn. May 11, 2009).

federal law by one of the state officials, that official may be sued in his or her official capacity.[10]  See Ex Parte Young, 209 U.S. 123, 159-160 (1908).  "[O]fficial-capacity actions for prospective relief are not treated as actions against the State." Graham, 473 U.S. at 167 n. 14.  "The Ex Parte Young exception . . . applies only when the lawsuit involves an action against state officials, not against the state." Elephant Butte Irrigation Dist. of N.M. v. Dep't of the Interior, 160 F.3d 602, 607 (10th Cir. 1998).  "It is beyond dispute that federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights." Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96 n. 14 (1989).  "An Ex Parte Young action may be commenced only against a state official acting in her official capacity and may seek [only] prospective relief to end a continuing violation of federal law." Whitfield v. Tennessee, 639 F.3d 253, 257 (6th Cir. 2011) (internal quotation marks omitted).  "The Ex Parte Young exception does not . . . extend to any retroactive relief." S & M Brands, Inc. v. Cooper, 527 F.3d 500, 508 (6th Cir. 2008).  "In determining whether the doctrine of Ex Parte Young avoids an Eleventh Amendment bar to

---

[10]"The Eleventh Amendment 'bars all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments." Sefa v. Kentucky, 510 F. App'x 435, 437 (6th Cir. 2013) (quoting Thiokol Corp. v. Dep't of Treasury, State of Mich., Revenue Div., 987 F.2d 376, 381 (6th Cir. 1993)).  However, state sovereign immunity applies only to "actions against state officials sued in their official capacity *for money damages.*" Barachkov v. 41B Dist. Court, 311 F. App'x 863, 865-66 (6th Cir. 2009) (quoting Ernst, 427 F.3d at 358) (quotation marks omitted) (emphasis added).

suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" Verizon Md., Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 645 (2002) (quoting Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 296 (1997)); see also Va. Office for Prot. and Advocacy v. Stewart, 131 S.Ct. 1632, 1639 (2011); Creusere v. Weaver, No. 07-5859, 2009 WL 170667, at *4 (6th Cir. Jan. 26, 2009).

      2.    *Ex Parte Young* Does Not Apply

Dr. Moore is not seeking prospective injunctive relief to end a continuing violation of federal law by any of the Individual Defendants. Notably, in his response, Dr. Moore does not argue the continuing violation aspect of *Ex Parte Young*, or explain what prospective relief is sought against the Individual Defendants. The only mention of *Ex Parte Young* in the response is Dr. Moore's statement that "prospective relief is a remedy pursuant to § 1983 and not barred by the 11th Amendment" and that "in part, prospective relief is requested by Professor Moore." The only forms of relief requested by Dr. Moore that could arguably be construed as prospective injunctive relief are the requests that: (1) Provost Faudree, Dean Grover, and anyone directed to shadow Dr. Moore be removed from any form of supervision over him, and (2) that the Defendants be enjoined from discriminating against Dr. Moore.

Dr. Moore's complaint does not make any allegations against Provost Faudree or Dean Grover that could be construed as claims of ongoing violations, as all of the claims against them relate to the circumstances of Dr. Moore's denied promotion. See, e.g., Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002) (categorizing "failure to promote" as a discrete act of alleged discrimination); Austion v. City of Clarksville, 244 F. App'x 639, 647 (6th Cir. 2007); El-Zabet v. Nissan N. Am., Inc., 211 F. App'x 460, 464 (6th Cir. 2006). With respect to President Raines, the only allegations Dr. Moore makes that could arguably be claims of ongoing violations are that she "condoned, promoted and was aware of" the ongoing violations of his civil rights, and that the discriminatory treatment against him and other African Americans with respect to salary, benefits, and conditions of employment occurred "during her tenure." These vague assertions say nothing of President Raines's conduct, what federal law(s) she is continually violating, or what conduct Dr. Moore seeks to enjoin. It appears that Dr. Moore is simply imputing responsibility for any ongoing violations by the University as an institution on President Raines due strictly to her role as President.

Moreover, Dr. Moore is not seeking any cognizable relief properly characterized as prospective injunctive relief against any of the Individual Defendants. From the complaint, it appears that the only forms of injunctive relief which could arguably be

considered prospective are the request that the court remove Provost Faudree, Dean Grover, and other individuals from any supervisory roles over Dr. Moore, and the request that the court enjoin the Defendants from discriminating against Dr. Moore. Even assuming, *arguendo*, that the request to remove Faudree and Grover from supervisory roles is a form of relief which the court could even grant, such relief does not address or seek to specifically enjoin an ongoing civil rights violation by one or more of the Individual Defendants. With respect to Dr. Moore's generalized request to enjoin the Defendants from engaging in discriminatory practices and conspiracy, Dr. Moore does not state against whom this injunctive relief is sought, or what specific ongoing conduct he seeks to enjoin. Even if the court were to consider the request to be against each Individual Defendant, Dr. Moore has failed to specify what particular ongoing conduct should be ceased. He essentially asks that the court order the Defendants to not act unlawfully. Such a vague, over-broad request to enjoin defendants from generally violating a plaintiff's constitutional rights is not the type of injunctive relief that courts provide. <u>See, e.g.</u>, <u>Coleman v. Dep't of Rehab. and Corr.</u>, 46 F. App'x 765, 772-73 (6th Cir. 2002) ("An injunction serves as a judicial declaration that a specific policy or proposed plan of action may be violative of the constitutional rights of others. [. . .] A blanket statement disapproving of violations of prisoners' Eighth and Fourteenth

Amendment rights is cumulative of the Amendments themselves and unnecessary."). Thus, Dr. Moore does not sufficiently seek "prospective relief to end a continuing violation of federal law" by a state official. See Whitfield, 639 F.3d at 257.

Because Dr. Moore has failed to satisfy the Ex Parte Young exception, the suit against the Individual Defendants in their official capacities is superfluous, as the University is already a party to the suit. Therefore, the court recommends that the Individual Defendants be dismissed in their official capacities. See Faith, 2013 WL 1489387, at *4 (the district court properly dismissed the official-capacity suit against a township's prosecuting attorney because the township, the real party in interest, was already a defendant to the lawsuit); Jackson v. Shelby Cnty. Gov't, No. 07-6356, 2008 WL 4915434, at *2 (6th Cir. Nov. 10, 2008) ("[T]he district court properly granted summary judgment to the defendants on the claims against the sheriff in his official capacity because those claims mirror the claims against the County, and are therefore redundant.") Glowacki v. Howell Pub. Sch. Dist., No. 2:11-cv-15481, 2013 WL 3148272, at *10 (E.D. Mich. June 19, 2013) ("[N]aming McDowell in his official capacity is redundant in a suit that also names the School District as a defendant. Because the claims against McDowell in his official capacity are in actuality claims against Defendant School District, the Court dismisses McDowell from this suit in his official

capacity.") (internal citations omitted).

The remainder of this report and recommendation addresses the Individual Defendants' motion for summary judgment with respect to the claims against them in their individual capacity.

## C.   Title VII Claims

With respect to Dr. Moore's claims of racial discrimination pursuant to Title VII, such claims cannot be brought against the Individual Defendants because they are not Dr. Moore's employers. Title VII makes it unlawful for an employer to discriminate against individuals based on their race, color, religion, sex, or national origin.   42 U.S.C. § 2000e-2(a)(1).   The Sixth Circuit has held that "an individual employee/supervisor, who does not otherwise qualify as an 'employer,' may not be held personally liable under Title VII." Wathen v. General Elec. Co., 115 F.3d 400, 405 (6th Cir. 1997).   It is undisputed that the University is Dr. Moore's employer.   Dr. Moore does not argue that any of the Individual Defendants qualify as his employer apart from their official capacities as agents of the University.   Therefore, Provost Faudree, Dean Grover, and President Raines cannot be held personally liable under Title VII, and Dr. Moore may only bring a Title VII discrimination claim against the University. Colston v. Cleveland Public Library, No. 12-4103, 2013 WL 1500438, at *4 (6th Cir. Apr. 15, 2013); Wathen, 115 F.3d at 405.   The court therefore recommends that Dr. Moore's Title VII discrimination and

retaliation claims be dismissed against the Individual Defendants.

**D.    Federal Civil Rights Claims (§§ 1981, 1983, 1985)**

Dr. Moore alleges that the Defendants violated his federal civil rights pursuant to 42 U.S.C. §§ 1981, 1983, and 1985.  His claims arise from two distinct categories of alleged discriminatory treatment: (1) the failure to promote him, and (2) the alleged disparate treatment that he has suffered throughout his employment, including unequal wages, opportunities, and terms and conditions of his employment.  First, Dr. Moore claims his rights were violated through the actions of Dean Grover, Provost Faudree, and President Raines during the course of his application for promotion to Full Professor, specifically with respect to their refusal to recommend him for promotion, their communications expressing negative opinions of his qualifications, and their allegedly false and misleading statements at his hearing before the Appeals Committee. Second, Dr. Moore alleges civil rights violations in the form of pervasive and systematic disparate treatment by the University, both throughout his employment at the University, as well as specifically during President Raines's tenure.  In particular, Dr. Moore claims that his salary is much lower than it should be for someone of his qualifications and experience; that he is paid much less than comparable or lesser qualified white colleagues; that others who are less qualified are promoted and given raises whereas his salary has remained stagnant and close to what he was making

when he was first hired; and that other professors are provided with better benefits and terms and conditions of their employment than those which he has been provided. Dr. Moore claims generally that the Defendants' actions have violated his Fourteenth Amendment rights. For the reasons below, the court recommends that all federal civil rights claims be dismissed against the Individual Defendants in their individual capacities.

1.  All Claims Should Be Dismissed Based on Qualified Immunity

"Qualified immunity is an affirmative defense that shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does 'not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Barrett v. Steubenville City Sch., 388 F.3d 967, 970 (6th Cir. 2004) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "Once a defendant raises qualified immunity, 'the burden is on the plaintiff to demonstrate that the official [is] not entitled to qualified immunity' by alleging 'facts sufficient to indicate that the [government official's] act in question violated clearly established law at the time the act was committed.'" Simmonds v. Genessee Cnty., 682 F.3d 438, 444 (6th Cir. 2012) (quoting Silberstein v. City of Dayton, 440 F.3d 306, 311 (6th Cir. 2006) and Russo v. City of Cincinnati, 953 F.2d 1036, 1043 (6th Cir. 1992)). "A defendant enjoys qualified immunity on summary judgment

unless the facts alleged and the evidence produced, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established." Kovacic v. Cuyahoga Cnty. Dep't of Children and Family Servs., No. 11-4002, 2013 WL 3929859, at *4 (6th Cir. July 31, 2013) (internal quotation marks omitted).  To demonstrate a violation of "clearly established" law, it must be clear to a reasonable person that the defendant's conduct was unlawful in the situation he confronted. Williams v. Richland Cnty. Children Servs., 489 F. App'x 848, 854 (6th Cir. 2012) (citing Schreiber v. Moe, 596 F.3d 323, 333 (6th Cir. 2010)).

In the instant case, all three Individual Defendants have raised the qualified immunity defense.  They assert that all of Dr. Moore's allegations against the Individual Defendants arise out of actions taken by them in performing their official duties, and that nothing in any of their letters or statements suggest clear constitutional violations.  They contend that their statements and conduct reflect opinions based on their individual academic judgments.

Dr. Moore does not address the qualified immunity argument in his response to the Individual Defendants' motion.  He has not provided any argument as to why the Individual Defendants are not entitled to qualified immunity, and he has not explained how any of

their acts violated his "clearly established rights." Dr. Moore has failed to demonstrate or even argue that it would be clear to a reasonable person that any of the Individual Defendants' conduct was unlawful. Accordingly, the court finds that Dr. Moore has failed to meet his burden of refuting qualified immunity, and therefore recommends that all of Dr. Moore's federal civil rights claims be dismissed against the Individual Defendants in their individual capacities on the grounds of qualified immunity.

2. <u>Statute of Limitations Bars Claims Based on Failure to Promote</u>

Dr. Moore's federal civil rights claims against the Individual Defendants should also be dismissed as time-barred. All of Dr. Moore's allegations against the Individual Defendants personally pertain to their communications, statements, and conduct regarding his application for promotion to Full Professor. Each of the allegedly discriminatory or otherwise unlawful acts relating to the denied promotion occurred outside of the applicable statute of limitations. While it appears that he does allege continuing violations by the University regarding his salary and employment terms, he has failed to allege any discriminatory acts by the Individual Defendants within the statute of limitations period. He also has not sufficiently alleged or provided evidence of a long-standing policy of discrimination by any of the Individual Defendants.

a. *Applicable Statute of Limitations*

T.C.A. § 28-3-104(a)(3) requires that "[c]ivil actions for compensatory or punitive damages, or both, brought under the federal civil rights statutes" be brought within one year from the time the cause of action accrued. "The accrual of a claim is governed by federal law, which holds that the limitations period generally begins to run when the plaintiff knew or had reason to know of the harm that formed the basis of the action." Brown v. Metro. Gov't of Nashville and Davidson Cnty., Tenn., No. 11-5339, 2012 WL 2861593, at *4 (6th Cir. Jan. 9, 2012) (citing Eidson v. State of Tenn. Dep't of Children's Servs., 510 F.3d 631, 634 (6th Cir. 2007)). While T.C.A. § 28-3-104(a)(3) appears to leave open the possibility that a plaintiff may sue for prospective, injunctive relief outside the one-year window, the Sixth Circuit applies the one-year personal injury statute of limitations period set forth in T.C.A. § 28-3-104(a)(1) to claims in Tennessee for injunctive relief pursuant to federal civil rights claims. Cox v. Shelby State Cmty. Coll., 48 F. App'x 500, 507 (6th Cir. 2002) (dismissing a claim for injunctive relief pursuant to § 1981 where the cause of action accrued more than one year prior to the filing of the complaint);[11] see also Irick v. Ray, 628 F.3d 787, 789 (6th

_____

[11]In reaching its conclusion that the Tennessee personal injury statute of limitations bars claims for injunctive relief pursuant to § 1981, the Sixth Circuit stated:

> There is a question, however, as to whether or not [plaintiff] may obtain injunctive relief, since claims for prospective non-monetary relief [under § 1981] are

-31-

Cir. 2010) ("In Tennessee, civil actions for compensatory damages or injunctive relief brought under the federal civil rights statutes must be commenced within one year of the accrual of the cause of action."); <u>Ramsey v. Hamilton Cnty.</u>, No. 1:10-CV-283, 2011 WL 3300386, at *2 (E.D. Tenn. Aug. 1, 2011) (same); <u>Harbison v. Little</u>, No. 3:06-cv-01206, 2007 WL 6887553, at *3 (M.D. Tenn. July 12, 2007) (same).

As an exception to applicable statutes of limitations for discriminatory employment practice claims, the Sixth Circuit recognizes the "continuing violation doctrine," which allows the court to "consider as timely all relevant violations 'including

---

not expressly limited by Tennessee statute. However, in <u>Wilson v. Garcia</u>, 471 U.S. 261 (1985), the Supreme Court directed federal courts to apply the most analogous state personal injury statute of limitations to claims brought under 42 U.S.C. § 1983 when no state statute directly governs the limitations period. The one-year statute of limitations period in Tenn. Code Ann. § 28-3-104(a)(1), for personal injury, has been traditionally used as the civil rights limitations period in Tennessee.

We recognize that the cases are not entirely consistent. <u>See, e.g.</u>, <u>Hedgepeth v. Tennessee</u>, 33 F. Supp. 2d 668, 678 (W.D. Tenn. 1998) (dismissing claims for money damages under Tenn. Code. Ann. § 28-3-104(a)(3) based on events occuring more than one year prior to suit but retaining claims for injunctive and declaratory relief). However, the best interpretation of our precedent directs us to apply the personal injury statute of limitations period set forth in § 28-3-104(a)(1) to Cox's claims for injunctive relief.

<u>Id.</u>

those that would otherwise be time barred.'"[12]   Nat'l Parks
Conservation Ass'n. Inc. v. Tenn. Valley Auth., 480 F.3d 410, 416
(6th Cir. 2007) (quoting Sharpe v. Cureton, 319 F.3d 259, 267 (6th
Cir. 2003)).  Although courts have been reluctant to apply this
doctrine outside the context of Title VII, the Sixth Circuit has
applied the continuing violation doctrine to claims for
deprivations of civil rights.  Id.  The Sixth Circuit has
recognized "two narrow situations falling under the continuing
violation theory: an ongoing series of discriminatory acts related
to a discriminatory decisions (such as disparate work assignments),
or a long-standing policy of discrimination."  Lyons v. Metro.
Gov't of Nashville and Davidson Cnty., 416 F. App'x 483, 491 (6th
Cir. 2011) (citing Sharpe, 319 F.3d at 266-67).  "If a
discriminatory practice is a 'discrete act' rather than a
'continuing violation,' the practice 'ceases as of the time it
occurs, not as of the time the consequences of the act cease.'"
Cline v. BWXT Y-12, LLC, 521 F.3d 507, 511 (6th Cir. 2008) (quoting
Booker v. Boeing Co., 188 S.W.3d 639, 645 (Tenn. 2006)).  "The fact
that these [discrete] actions may have had a continuing impact is
not a sufficient bases upon which to apply the continuing violation
doctrine."  Lyons, 416 F. App'x 483 at 491.  "Discrete acts"
include such employment actions as "termination, failure to

---

[12]Dr. Moore has not argued a continuing violation by the Individual
Defendants.  However, for the sake of completeness, the court will
consider the application of the continuing violation doctrine.

-33-

promote, denial of transfer, or refusal to hire." See Cline, 521
F.3d at 511; Hunter v. Sec'y of U.S. Army, 565 F.3d 986, 993–94
(6th Cir. 2009); Austion v. City of Clarksville, 244 F. App'x 639,
647 (6th Cir. 2007); El-Zabet v. Nissan N. Am., Inc., 211 F. App'x
460, 464 (6th Cir. 2006); Sharpe, 319 F.3d at 267; see also Nat'l
R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002); Taylor v.
Donahoe, 452 F. App'x 614, 619 (6th Cir. 2011); Bowerman v. Int'l
Union, United Auto., Aerospace and Agric. Implement Workers of Am.,
Local No. 12, 646 F.3d 360, 366 (6th Cir. 2011).

    While discrete discriminatory acts are typically excluded
under the continuing violations doctrine, the Sixth Circuit has
recognized that the continuing violations theory may still apply to
discrete discriminatory acts if those acts fall into the second
category of continuing violations by constituting part of a
"longstanding and demonstrable policy of discrimination." Austion,
244 F. App'x at 647; Sharpe, 319 F.3d at 268. "To establish a
longstanding and demonstrable policy of discrimination, a plaintiff
'must demonstrate something more than the existence of
discriminatory treatment in his case.'" Austion, 244 F. App'x at
647 (quoting Haithcock v. Frank, 958 F.2d 671, 679 (6th Cir.
1992)). "A plaintiff must establish that the employer's standing
operating procedure included intentional discrimination against the
class of which plaintiff was a member." Id. (internal citations
omitted). "Unrelated incidents of discrimination will not suffice

to invoke this exception; rather there must be a continuing over-arching policy of discrimination. Generally this exception is strictly construed and is satisfied only where the defendant has a known policy or rule supporting discrimination." Id. (internal citations and quotation marks omitted); see also Neal v. Shelby Cnty. Gov't Cmty. Servs. Agency, 815 F. Supp. 2d 999, 1004-05 (W.D. Tenn. 2011); Greenleaf v. DTG Operations, Inc., No. 2:09-CV-192, 2011 WL 883022, at *6 (S.D. Ohio Mar. 11, 2011); Barber v. City of Chattanooga, No. 1:08-cv-294, 2011 WL 1321392, at *8 (E.D. Tenn. Apr. 1, 2011).

### b. Failure to Promote

Insofar as Dr. Moore's §§ 1981, 1983, and 1985 claims are based on the alleged discriminatory acts of the Individual Defendants in refusing to recommend Dr. Moore for promotion to Full Professor, those claims should be dismissed because they rely on discrete discriminatory acts that occurred more than one year prior to the filing of his complaint. The first allegedly discriminatory action cited by Dr. Moore was in 2008, when Dean Grover communicated to Provost Faudree that Grover did not think Dr. Moore was qualified for the position of Full Professor. On January 15, 2009, Dr. Moore was informed by letter that Provost Faudree would not be recommending him for promotion. Dr. Moore appealed that decision on grounds of racial discrimination and failure to review his application, and the administrative hearing on his appeal was

held on March 5, 2009.  Dr. Moore was present at and participated in the hearing.  The Appeals Committee's decision to deny Dr. Moore's appeal was communicated via a memorandum addressed to President Raines, dated March 6, 2009, which was copied to Dr. Moore.  The final decision not to recommend Dr. Moore to the Tennessee Board of Regents for promotion was made by President Raines, and Dr. Moore was informed of this decision in a letter dated April 30, 2009.  Thus, the latest date on which claims of civil rights violations based on failure to promote could have accrued was April 30, 2009.  Dr. Moore filed the instant complaint on December 26, 2010, almost twenty months after the final decision on his application for promotion was made.[13]  Thus, the cause of action for a discrimination claim based on failure to promote accrued more than a year prior to Dr. Moore's complaint.

The untimeliness of Dr. Moore's failure to promote claim is not saved by the continuing violation doctrine.  "Failure to promote" is typically considered a "discrete act" which cannot constitute a continuing violation.  See, e.g., Morgan, 536 U.S. at 114; Cline, 521 F.3d at 511; Austion, 244 F. App'x at 647; El-Zabet, 211 F. App'x at 464.  While the Sixth Circuit recognizes

---

[13]Moreover, in Dr. Moore's EEOC Discrimination Claim filed in August of 2009, he alleges racial discrimination based on failure to promote.  This EEOC charge provides further evidence that Dr. Moore knew of the harm that formed the basis for civil rights actions based on his denied promotion more than one year prior to his complaint being filed.

that the continuing violation doctrine may apply to discrete discriminatory acts that are part of a longstanding and demonstrable policy of discrimination, Dr. Moore has only made a conclusory allegation of ongoing civil rights violations and "deliberate and systematic deprivation of the Civil Rights of the plaintiff and other African-Americans, to equal access to jobs, pay, opportunities and promotion in the University and at the Fogelman College." He has not alleged any specific discrimination against African-Americans outside of his case, presented evidence of the existence of an "over-arching policy" of discrimination, or explained how his denied promotion relates to any continuing policy of discrimination. See Austion, 244 F. App'x at 647. Dr. Moore has thus failed to provide evidence of, or even allege, a "known policy or rule supporting discrimination" which could satisfy the "strictly construed" exception of applying the continuing violation theory to discrete acts of discrimination. Id.; Barber, 2011 WL 1321392, at *8 ("Failure to promote claims are discrete acts of discrimination not subject to the continuing violation doctrine. Although the Sixth Circuit has recognized that the continuing-violations theory still applies to discrete discriminatory acts that are part of a longstanding and demonstrable policy of discrimination, Plaintiff has not even alleged such a policy, let alone presented competent proof demonstrating one.") (internal quotation marks and citations

omitted).  Therefore, the §§ 1981, 1983, and 1985 claims relating to the failure to promote should be dismissed as time-barred against the Individual Defendants.

c.  *Ongoing Civil Rights Violations*

Dr. Moore also alleges in his complaint that there have been ongoing civil rights violations in the University and the Fogelman College of Business during President Raines's tenure, and that President Raines at all times "condoned, promoted, and was aware of" such violations.  He claims that he has been consistently treated disparately with respect to his salary, benefits, opportunities for promotion, and terms and conditions of employment, throughout his tenure at the University.  Dr. Moore has not presented evidence of an "ongoing series of discriminatory acts related to a discriminatory decision" or a "long-standing policy of discrimination" by President Raines.  As previously discussed, Dr. Moore has not provided evidence of a known policy or rule supporting discrimination, or anything more than potentially discriminatory treatment in his particular case.  With respect to an "ongoing series of discriminatory acts," Dr. Moore has not even alleged any specific acts by President Raines (or any of the Individual Defendants) other than those relating to the failure to promote claim.  While he alleges disparate treatment, and possibly ongoing discriminatory acts, by the University in the assignment of teaching loads and salaries, he does not attribute this treatment

to any of the Individual Defendants personally, and does not provide any evidence to show that any of the Individual Defendants were responsible for these employment conditions. At best, he alleges that the already pervasive discrimination by the University continued through President Raines's tenure, and that she did nothing to address or change it. While he asserts that she "condoned and promoted" it, he has not provided any evidence of promotion by President Raines. Accordingly, the court finds that Dr. Moore has failed to present any evidence of continuing discriminatory conduct by the Individual Defendants which occurred within one year prior to the filing of his complaint, and therefore recommends that Dr. Moore's §§ 1981, 1983, and 1985 claims be dismissed as time-barred.

3. <u>§ 1985 Claim is Barred by the Intra-Corporate Conspiracy Doctrine</u>

The court further finds that Dr. Moore's § 1985 claim, and any other conspiracy claims he may be bringing, should be dismissed based on the "intra-corporate conspiracy" doctrine. The intra-corporate conspiracy doctrine states: "It is basic in the law of conspiracy that you must have two persons or entities to have a conspiracy. A corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation." <u>Hull v. Cuyahoga Valley Joint Vocational Sch. Dist.</u>, 926 F.2d 505, 509-10 (6th Cir.1991); <u>see also</u> <u>Estate of Smithers ex rel. Norris v. City</u>

of Flint, 602 F.3d 758, 764 n. 4 (6th Cir. 2010). "Where all of
the defendants are members of the same collective entity, the law
does not recognize the existence of two separate "people" to form
a conspiracy." Upton v. City of Royal Oak, 492 F. App'x 492, 506
(6th Cir. 2012). Although the doctrine is often discussed in the
antitrust field, "it is also applied in cases alleging civil rights
conspiracies." Johnson v. Hills & Dales Gen. Hosp.,40 F.3d 837,
840 (6th Cir. 1994). The Defendants in this case are the
University and three individuals who are employees and agents of
the University. All of the Individual Defendants are members of
the same collective entity (the University), and therefore there
can be no conspiracy among them.[14] See, e.g., Al-Marayati v.
University of Toledo, No. 97-3161, 1998 WL 252760, at *2 (6th Cir.
May 13, 1998) ("The alleged conspirators in this case consist of
the University and various current and former employees of the
University who acted within the scope of their legitimate
authority. Therefore, a claim of conspiracy may not be asserted.");
Hull, 926 F.2d at 510 ("In the present case, plaintiff is alleging
a conspiracy between a school district superintendent, the

---

[14]"The Sixth Circuit has recognized an exception to this general
rule in holding that 'an intra-corporate conspiracy may be
established where individual defendants are also named and those
defendants act outside the scope of their employment for personal
reasons.'" Hines v. Town of Vonore, 912 F. Supp. 2d 628, 654 (E.D.
Tenn. 2012) (quoting Johnson, 40 F.3d at 840). None of Dr. Moore's
allegations suggest that the Individual Defendants named in this
case were acting outside of the scope of their employment for
personal reasons.

executive director of the district, and a school administrator, all of whom are employees or agents of the Board. Since all of the defendants are members of the same collective entity, there are not two separate 'people' to form a conspiracy."). Therefore, the court further recommends that Dr. Moore's § 1985 claim be dismissed for failure to allege a conspiracy between two or more entities. Likewise, the state law conspiracy claim should also be dismissed.[15]

**E.    Tennessee Statutory and Common Law Claims**

Finally, Dr. Moore alleges a series of state law claims against the Individual Defendants in their individual capacities, including negligence, false light, invasion of privacy, interference with contractual relations, intentional infliction of emotional distress, outrageous conduct, misrepresentation, reckless and negligent reporting, harassment, fraud, slander, and libel. In their motion for summary judgment, the Individual Defendants argue generally that Dr. Moore's "various theories of recovery against Defendants . . . for alleged acts of race discrimination should be dismissed as mere assertions that are baseless and unsupported by the undisputed material facts." Aside from contesting that any of the their actions were racially motivated or discriminatory, the

---

[15]Dr. Moore also lists conspiracy as a cause of action. Any state law conspiracy claim, like Dr. Moore's § 1985 claim, is barred by the intra-corporate conspiracy doctrine discussed above. <u>See, e.g.</u>, <u>Davis v. Pickell</u>, No. 11-11196, 2013 WL 1278520, at *20 (E.D. Mich. Mar. 26, 2013) (granting summary judgment on state law conspiracy claim based on the intra-corporate conspiracy doctrine).

Individual Defendants do not substantively argue the basis of their motion for summary judgment on the state law claims or demonstrate how Dr. Moore is unable to satisfy all of the elements of those causes of action. Therefore, because the Individual Defendants have failed to satisfy their burden of showing that there is no genuine issue of material fact for trial, the court recommends that their motion for summary judgment be denied with respect to the Tennessee state law claims.

### III.   RECOMMENDATION

For the above reasons, the court recommends that the Individual Defendants' motion for summary judgment be granted in part and denied in part.

Respectfully submitted,

s/ Tu M. Pham
TU M. PHAM
United States Magistrate Judge

August 16, 2013
Date

### NOTICE

**WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, A PARTY MAY SERVE AND FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS. A PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY. FED. R. CIV. P. 72(b)(2). FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.**